UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRAIG MOORE, AND<br>TONI JEANNE LABAT MOORE, BOTH<br>INDIVIDUALLY, AND ON BEHALF<br>OF THEIR MINOR CHILD A.D.M.<br><br>Plaintiffs<br><br>VS.<br><br>BASF CORPORATION<br>INTERNATIONAL PAINT, LLC,<br>THE VALSPAR CORPORATION,<br>RADIATOR SPECIALTY COMPANY,<br>UNITED STATES STEEL CORP.,<br>EXXONMOBIL CORPORATION,<br>CHAMPION BRANDS, LLC, E. I. DU PONT DE<br>NEMOURS AND COMPANY,<br>AND ABC INSURANCE COMPANY<br><br>Defendants | SECTION:    "     "<br><br>JUDGE:       "     "<br><br>MAGISTRATE:  "     " |

**Plaintiffs' Original Complaint**

The plaintiffs, **CRAIG MOORE, TONI JEANNE LABAT MOORE,** and **A.D.M.,** through their attorneys, file this Complaint as follows:

**Parties**

1.

A.    *The Plaintiffs*

1

The plaintiffs are:

i. **Craig Moore,** a major residing at 3733 Lausat Street, Metairie, Jefferson Parish, Louisiana;

ii. **Toni Jeanne Labat Moore,** a major residing at 3733 Lausat Street, Metairie, Jefferson Parish, Louisiana;

iii. **A.D.M.,** a minor residing at 3733 Lausat Street, Metaire, Jefferson Parish, Louisiana;

B.   *The Defendants*

The defendants are:

i. **BASF Corporation,** a foreign corporation, which is registered to do and doing business in this state with its registered business office and principle place of business in Delaware, and New Jersey, and whose agent for service of process is CT Corporation, 5615 Corporate Boulevard., Suite 400 B, Baton Rouge, Louisiana 70808;

ii. **International Paint, LLC,** a foreign corporation, which is registered to do and doing business, with its registered business office and principle place of business in Delaware, and Texas, and whose agent for service of process is CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234;

iii. **The Valspar Corporation,** a foreign corporation, which is registered to do and doing business in this state with its registered business office and principle place of business in Delaware, and Minnesota, and whose agent for service of process is CT Corporation, 5615 Corporate Boulevard., Suite 400 B, Baton Rouge,

Louisiana 70808;

iv. **Radiator Specialty Company**, a foreign corporation, which is registered to do and doing business in this state with it's registered business office and principle place of business in North Carolina, and whose mailing address is 1900 Wilkinson Boulevard., Charlotte, North Carolina 28208.

v. **United States Steel Corporation,** as successor in interest to US Steel Corporation and USX Corporation, a foreign corporation, which is registered to do and doing business in this state with its registered business office in Delaware and principal place of business in Pennsylvania and whose agent for service of process is National Registered Agents, Inc., 1011 N. Causeway Boulevard., Suite 3, Mandeville, Louisiana 70471

vi. **ExxonMobil Corporation**, as the successor in interest to Exxon Corporation, Humble Oil & Refining Co., Esso, Inc., a foreign corporation, which is registered to do business in this state with its registered business office, and principal place of business in Texas, and New Jersey and whose agent for service of process is Corporation Service Company 320 Somerulos Street, Baton Rouge, Louisiana 70802;

vii. **Champion Brands, LLC**, a foreign corporation, with its registered business office and principle place of business in Missouri, and whose registered agent for service of process is Matthew D. Lowe, 301 S. Craig, Clinton, Missouri 64735.

viii. **E. I. du Pont de Nemours and Company doing business as DuPont,** a foreign corporation, which is registered to do and doing business in this state

3

with its principal business office in Wilmington, Delaware and registered office and whose agent for service of process is CT Corporation System, 5615 Corporate Boulevard, Suite 400B Baton Rouge, Louisiana 70808;

ix. **ABC Insurance Company**, a foreign insurance company that insured Parks Corporation, a dissolved entity at all times relevant to this litigation.

**Jurisdiction and Venue**

2.

This Court has jurisdiction under 28 U.S.C. § 1332 in that there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.

This Court has personal jurisdiction over the defendants who are doing business in the district or who did business in this district at a relevant time.

4.

The defendants are incorporated under the laws of North Carolina, Delaware, New Jersey, and Missouri respectively, with their principal places of business in New Jersey, Minnesota, North Carolina, Pennsylvania, Texas, Delaware, and Missouri.

5.

Venue is proper in this district under 28 U.S.C. § 1391 (b)-(c) because the defendants are doing business in this district and because the events giving rise to the plaintiffs' causes of action arose in this district.

**Background**

6.

Craig Moore ("Mr. Moore") worked as a painter from 1981 through 2005 at various locations including Avondale Shipyard and performed various tasks such as painting and, cleaning paint with benzene containing products such as paints, solvents, primers, thinners, and other products. Mr. Moore performed these tasks at the Avondale Shipyard in Harvey, Louisiana and other locations. Mr. Moore used Liquid Wrench; Rust Ban 392; Parks Adhesive Remover, parks Mineral Spirits Paint thinner, Parks Lacquer Thinner, Parks Brush Cleaner, Parks Pro Liquid Paint Stripper, Parks Liquid Strip, Parks Liquid Deglosser; Valspar plastic primer, paint and thinner; International paints, protective coating, and primers; DuPont Corlar Epoxy and Polyeurethane; Thoroseal Redi Mix Paint; and Champion Brake Cleaner. These products were manufactured, supplied, distributed and sold by defendant, BASF Corporation, International Paint, LLC, The Valspar Corporation, Radiator Specialty Company, United States Steel Corp., ExxonMobil Corp., Champion Brands, LLC, E. I. du Pont de Nemours, and Company, and Parks Corporation which was insured by ABC Insurance Company.

7.

From 1981 through 2005 he would regularly use or come into contact with pure benzene or benzene-containing products including paints, solvents, primers, and thinners. Mr. Moore used Champion Brake Cleaner, Liquid Wrench, and Rust Ban 392 from the early 1970's through the 1980's. On March 25, 2010, Mr. Moore was diagnosed with multiple myeloma due to his exposure to benzene and benzene-containing products.

8.

At all material times herein, defendants, BASF Corporation, International Paint, LLC,

The Valspar Corporation, Radiator Specialty Company, United States Steel Corp., ExxonMobil Corp., Champion Brands, LLC, E. I. du Pont de Nemours and Company and Parks Corporation were manufacturers, distributors, sellers and, suppliers, of benzene or benzene-containing products.

9.

While working as a painter from 1981-2005, Mr. Moore was exposed daily to high levels of benzene when he performed tasks as a painter and as a construction worker. He was also exposed to high levels of benzene from products manufactured, distributed or sold by the defendant.

10.

Mr. Moore sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries in each year from 1981 through 2005.

11.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named defendants or their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, lymphoma and other blood disorders.

12.

Through industry and medical studies unknown to plaintiffs, the defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute

gross negligence and demonstrate a reckless disregard for the rights and safety of others. Furthermore, the defendants committed numerous tortious acts that include, without limitation, negligently misrepresenting, concealing, suppressing, and omitting material information about the health effects of benzene and precautionary measures in regard thereto, as specifically alleged below.

13.

As a direct and proximate result of exposure to benzene and products containing high levels of benzene, Mr. Moore suffered injury including, but not limited to, multiple myeloma; physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life.

14.

The causal connection between Mr. Moore's injuries and benzene has been scientifically documented since 1948.

15.

The development of multiple myeloma as a result of chronic benzene exposure has been well documented, and death resulting from multiple myeloma has been associated with benzene exposure.

16.

Multiple myeloma is a malignant disease that affects the blood and bone marrow.

17.

Scientists have also linked myelodysplastic syndrome (MDS), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

18.

The adverse impact of exposure to levels of benzene has been known to range from less than five years to in excess of thirty years.

19.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system.

20.

Exposure to benzene is usually through inhalation, although skin contact may occur. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

21.

Long-term benzene exposure may also adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

22.

In the September 1948 edition of the American Petroleum Institute, Toxicological Review, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, they stated that benzene use was extensive in the petroleum industry with the greatest amount of benzene blended into motor gasoline.

23.

As of 1948, the American Standards Association and most states had set an arbitrary limit

of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. In as much as, the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero. The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.

24.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may potentially be exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, storage tanks—air masks should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used.

25.

The defendants knew or should have known about the causal relationship between benzene and cancer-related illnesses. The defendants failed to warn Mr. Moore and other similarly situated workers about the health hazards associated with benzene.

26.

The defendants are guilty of negligence, gross-negligence, strict liability, and fault identified throughout this complaint more specifically as follows:

**Negligence**

27.

The defendants breached duties, which they owed to Mr. Moore and the plaintiffs to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

a. to design their products to contain available and suitable products other than benzene;

b. to sell benzene-free products;

c. to select materials other than benzene for inclusion into their products;

d. to fully test their respective products for health risks associated with the normal and intended use of their products;

e. to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;

f. to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

g. to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

h. to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

i. to refrain form negligently misrepresenting the safety and health risks of the products they sold;

j. to inquire about or investigate the safety and health risks of the products they sold;

k. to research, study and be aware of medical and scientific studies concerning the

    health hazards of benzene; and

    l.  other acts which may be revealed at the trial of this matter.

28.

As a direct and proximate result of the defendants' negligent breach of their duties, the plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the defendants encompasses the risk of the injuries sustained by the plaintiffs, the duties breached were intended to protect the plaintiffs from the injuries they have sustained, and the defendants' breaches of their duties constituted the direct legal cause of the injuries to the plaintiffs. The defendants are thus jointly and solidarily liable for all damages caused by their breaches.

**Strict Product Liability**

29.

Exposure to benzene from the defendants' products and/or products under their care, custody and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.

30.

The defendants' products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control.

31.

Mr. Moore was an intended and foreseeable user of the alleged defective products and damages and defendants could reasonably have anticipated the losses to the plaintiffs.

32.

The defects in the defendants' products and equipment include, but are not limited to, the following:

a. inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

b. lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

c. lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

d. lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

e. lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

f. lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;

g. defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and

i. other acts which may be revealed at the trial of this matter.

33.

The defendants sold their products with conscious disregard for the safety of users of the

products and other persons who might be injured thereby.

34.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by all defendants, Mr. Moore inhaled benzene fumes and other harmful substances emitted by the normal use of the products, proximately causing multiple myeloma related to benzene exposure from which he suffers and for which these defendants are strictly liable under Louisiana law.

35.

The defective condition of the defendants' products proximately caused or substantially contributed to plaintiffs' injuries or damages as described elsewhere herein. The defendants are hence jointly and solidarily strictly liable for the damages caused by their fault.

36.

## Cause of Action Against the Manufacturer Under Louisiana Products Liability Act for Post 1988 Exposures

a. The manufacturer of each of the post 1988 products constitutes a manufacturer under the Louisiana Products Liability Act [LPLA].

b. Each of the post 1988 products constitutes a product under the Louisiana Products Liability Act [LPLA].

c. The exposure of Mr. Moore to benzene fumes from the defendants' products resulted from normal, foreseeable, use of the manufacturers' products.

d. The design of the benzene containing products are defective.

e. The use of benzene in each of the products constitutes a defect in design and/or manufacturing and/or composition that posed an unreasonable risk of harm to each user.

f.  The manufacturer's products, used by Mr. Moore were in a defective condition and were unreasonably dangerous under normal use at the time the products left each manufacturer's control.  Mr. Moore was an intended and foreseeable user of the alleged defective products and damages and losses to Mr. Moore reasonably could have been anticipated by each manufacturer.

g.  The defects in the manufacturers' benzene containing products are the result of and/or include, but are not limited to, the following:

   i.  In failing to design their respective products so as not to emit dangerous levels of benzene;

   ii.  In providing benzene containing products which, by virtue of their design and/or manufacturing and/or composition, were unreasonably dangerous under reasonably anticipated use;

   iii.  In providing benzene containing products which, by virtue of a lack of an adequate warning(s), were unreasonably dangerous under reasonably anticipated use;

   iv.  In providing benzene containing products which did not conform to the express warranties made by each manufacturer regarding their fitness for use as reasonably anticipated;

   v.  In manufacturing, testing, marketing, distributing, licensing and selling of unreasonably dangerous benzene containing products;

   vi.  In failing to properly test the benzene containing products to properly evaluate the level of emissions of benzene under foreseeable conditions for extended periods of time;

    vii. In failing to warn each user of the unreasonably dangerous nature of the benzene containing products used by the Plaintiff, or warn adequately of the presence of excessive levels of emissions of benzene and the hazards associated with the excess levels of emissions of benzene in the manufacturer's products.

    viii. In failing to ensure that the benzene containing products that each manufacturer manufactured and provided to each user was suitable for its intended use;

    ix. In failing to adhere to any and all express warranties of fitness and safety for the benzene containing products manufactured;

    x. In manufacturing and providing benzene containing products which were unduly dangerous due to their emissions of benzene; and

    xi. Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

**Damages Sustained by Mr. Moore's Child and Wife**

37.

Due to the defendants' fault, as described above, and because of the benzene-related injuries of Mr. Moore the plaintiffs have suffered loss of consortium, loss of services, loss of affection, and loss of nurture and are entitled to damages as are reasonable.

**Compensatory Damages**

38.

As a result of the acts and omissions of the defendants, the plaintiffs are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana

law. These damages are, without limitation:

  a. Past, present, and future physical pain and suffering;

  b. Past, present, and future mental anguish and emotional distress;

  c. Disfigurement and embarrassment;

  d. Physical Impairment;

  e. Past and future earnings;

  f. Lost earning capacity;

  g. Physical and Mental Disabilities;

  h. Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

  i. Loss of enjoyment of life;

  j. Fear of cancer and other diseases;

  k. Expenses to train, educate or otherwise enable the plaintiffs to be gainfully employed;

  l. Loss of society, consortium, companionship, services, nurture, and love and affection;

  m. Wrongful death damages; and

  n. Survival damages.

## Jury Trial

39.

The plaintiffs pray for trial by jury.

## Discovery Rule

40.

The prescriptive period does not start until the plaintiffs knew or should have known that the plaintiff's Multiple myeloma was caused by benzene. Here, the result of the plaintiff's

exposure to benzene was inherently undiscoverable. The cancer took years to develop, and even when the symptoms did manifest, neither the physicians nor the plaintiffs detected the link between Mr. Moore's benzene exposures and his malignancies. The Moore family never heard or saw anything that linked benzene to his malignancy. Mrs. Moore, did not learn of a possible connection between the benzene Mr. Moore was exposed and his illness until the end of 2010 which is less than one year from filing of this complaint.   Mr. Moore's cancer was the product of exposure to these chemicals over a period of time rather than from a single point in time. Hence, the limitation period did not start until late 2010 when the plaintiff learned about the cause of his Multiple myeloma.

**Prayer**

41.

For these reasons, the plaintiffs ask that BASF Corporation, International Paint, LLC, The Valspar Corporation, Radiator Specialty Company, United States Steel Corporation, ExxonMobil Corporation, Champion Brands, LLC, E. I. du Pont de Nemours and Company and ABC Insurance Company as an insurer of Parks Corporation be cited to appear and answer, and that on final trial, the plaintiffs have:

I. Judgment against BASF Corporation, International Paint, LLC, The Valspar Corporation, Radiator Specialty Company, United States Steel Corporation, ExxonMobil Corporation, Champion Brands, LLC, E. I. du Pont de Nemours and Company and ABC Insurance Company as an insurer of Parks Corporation for any and all damages and the actual and special damages suffered by the plaintiffs as a result of defendant's conduct;

II. Costs of suit;

III. Prejudgment and post-judgment interest at the highest rate provided by law; and

IV. All other and further relief to which the plaintiffs may be entitled.

        Respectfully Submitted:

        /s/ L. Eric Williams, Jr.
        L. Eric Williams, Jr. (La. Bar No. 26773)
        **Williams Law Office, LLC**
        433 Metairie Road, Ste. 404
        Metairie, Louisiana 70005
        Telephone: (504) 832-9898
        Facsimile: (504) 832-9811
        E-mail:   eric@amlbenzene.net

        /s/ Frank J. D'Amico, Jr.
        Frank J. D'Amico, Jr. (La. Bar No. 17519)
        **Frank J. D'Amico, Jr., APLC**
        4731 Canal St.
        New Orleans, Louisiana 70119
        Telephone:   (504) 525-7272
        Facsimile:   (504) 525-9522
        E-mail:   frank@damicolaw.net

        **ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE:**

**BASF Corporation**
Through its Registered Agent
CT Corporation
5615 Corporate Blvd., Ste. 400B
Baton Rouge, Louisiana 70808

**International Paint, LLC**
Through its agent for service of process
CT Corporation System,
350 N. St., Paul St., Ste. 2900,
Dallas, Texas 75201-4234;

18

**The Valspar Corporation**
Through its Registered Agent
CT Corporation
5615 Corporate Blvd., Ste. 400B
Baton Rouge, Louisiana 70808

**Radiator Specialty Company**
Through its agent for service of process
Ronald M. Weiner
600 Radiator Rd.,
Indian Trail, North Carolina 28079

**United States Steel Corporation**
Through its agent for service of process
National Registered Agents, Inc.,
1011 N. Causeway Blvd., Ste. 3,
Mandeville, LA 70471

**ExxonMobil Corp.**
Through its Registered Agent
The Prentice Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**Champion Brands, LLC**
Through its Registered Agent
Matthew D. Lowe,
301 S. Craig,
Clinton, MO 64735.

**E. I. du Pont de Nemours and Company**
Through its Agent for Service of Process:
CT Corporation
5615 Corporate Blvd., Ste. 400B
Baton Rouge, Louisiana 70808