UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CRAIG MOORE, ET AL.                        CIVIL ACTION

VERSUS                                     NO: 11-1001

BASF CORPORATION, ET AL.                   SECTION: R(2)


**ORDER AND REASONS**

Before the Court is defendant Valspar Corporation's motion to dismiss plaintiffs' complaint.[1] The motion is joined by defendants Exxon Mobil Corporation and International Paint.[2] Because the Court finds that the complaint states a claim for relief that is plausible on its face, defendants' motion is DENIED.

**I.  BACKGROUND**

Plaintiffs' claims arise from Craig Moore's alleged exposure to products containing benzene when he worked as a painter from 1981 to 2005. In 2010, Mr. Moore was diagnosed with multiple myleoma. On April 28, 2011, plaintiffs filed a complaint against BASF Corporation, International Paint, LLC, the Valspar

---

[1]   R. Doc. 25.

[2]   R. Docs. 42, 44.

Corporation, Radiator Specialty Company, United States Steel Corporation, Exxon Mobil Corporation, Champion Brands, LLC, E.I. Du Pont De Menours and Company, and ABC Insurance Company.[3] The complaint asserts that defendants are manufacturers of benzene or benzene-containing products that knew or should have known that exposure to benzene causes leukemia and other blood disorders, and failed to warn Mr. Moore of the dangers of benzene-containing products. Plaintiffs assert claims of negligence, strict product liability and liability under the Louisiana Products Liability Act (LPLA).

Valspar Corporation (Valspar) filed this Rule 12 (b)(6) motion to dismiss plantiffs' complaint for failure to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Exxon Mobil Coporation (Exxon) and International Paint, LLC (International Paint) joined the motion, and plaintiffs oppose it.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The

---

[3] R. Doc. 1.

allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). And the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In

3

other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

**III. DISCUSSION**

  *A. Applicability of the LPLA*

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). A plaintiff, therefore, may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA. LA. REV. STAT. ANN. § 9:2800.52. To maintain a products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product

4

unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. LA. REV. STAT. ANN. § 9:2800.54. A plaintiff can demonstrate that a product is "unreasonably dangerous" under the LPLA by showing: (1) that it was unreasonably dangerous in construction or composition; (2) that it was unreasonably dangerous in design; (3) that it was unreasonably dangerous because of inadequate warning; or (4) that it was unreasonably dangerous because of nonconformity to an express warranty. LA. REV. STAT. ANN. § 9:2800.54(B). The "statutory mechanisms for establishing that a product is unreasonably dangerous 'are predicated on principles of strict liability, negligence, or warranty.'" *Stahl v. Novartis Pharm. Corp*, 283 F.3d 254, 261 (5th Cir. 2002) (citing *Jefferson v. Lead Indus. Assoc., Inc.*, 930 F.Supp. 241, 245 (E.D. La. 1996), *aff'd and adopted in toto*, *Jefferson v. Lead Indus. Ass'n Inc.*, 106 F.3d 1245, 1247-48 (5th Cir. 1997)). Under the LPLA, however, negligence, strict liability, and breach of warranty cannot be asserted as independent theories of recovery against a manufacturer. *Id.* (citing *Jefferson,* 930 F.Supp. at 241); *see, e.g., Touro Infirmary v. Sizeler Architects*, 947 So.2d 740, 744 (La. Ct. App. 2006) (finding no independent breach of express warranty claim);

*Automatique New Orleans, Inc. v. U-Select-It, Inc.*, 1995 WL 491151 at *3, n. 2 (E.D. La. 1995) (finding no independent negligence claim).

Defendants argue that plaintiffs' claims of negligence and strict liability should be dismissed because the LPLA applies to plaintiffs' cause of action and establishes the exclusive theories of liability. Plaintiffs argue that because the LPLA applies prospectively only, they are entitled to assert claims of negligence and strict liability based on the "significant exposure" theory for causes of action that accrued before the LPLA was passed.

The Louisiana Supreme Court has held that the LPLA does not apply retroactively because it is "substantive." *See Gilboy v. Amer. Tobacco Co.*, 582 So.2d 1263, 1264-65 (La. 1991) (explaining that the LPLA "alters substantive rights" and "[a] statute that changes settled law relating to substantive rights only has prospective effect."). As a general rule, "the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues." *Cole v. Celotex Corp.*, 599 So.2d 1058, 1063 (La. 1992). A cause of action accrues when a plaintiff may bring a lawsuit. *Id.* at 1063 n.15. Accordingly, if Moore's cause of action accrued before the passage of the LPLA on September 1, 1988, then pre-LPLA law would

apply to his claims.

The Louisiana Supreme Court first announced the "significant tortious exposure" theory in *Cole v. Celotex Corp.*, 599 So.2d 1058, 1066 (La. 1992). Under this theory, a plaintiff's cause of action in a long-latency occupational disease case accrues "when the exposures are 'significant and such exposures later result in the manifestation of damages.'" *Austin v. Abney Mills*, 824 So.2d 1137, 1154 (La. 2002) (quoting *Cole*, 599 So.2d at 1066). *Cole* involved the Louisiana Comparative Fault Law ("Act 431"). LA. CIV. CODE arts. 2323, 2324, 2103 (Repealed); LA. CIV. CODE P. arts 1811, 1917; 1979 La. Acts, No. 431, §§ 1 et. seq., 4, 7.

In *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 530 (5th Cir. 1995), the Fifth Circuit restricted the application of *Cole*'s "significant exposure" theory to causes of action under Act 431. The Fifth Circuit reasoned that in *Cole*, the Louisiana Supreme Court determined only the meaning of "events" under Act 431, and did not make a broader determination of what constitutes injury or damage in a long-latency occupational disease case. Because the LPLA did not contain the phrase "arising from events" that is present in Act 431, the Fifth Circuit found that the significant exposure theory did not apply to causes of action under the LPLA. Instead, the Court held that the date of

7

diagnosis should be used to determine the date of accrual of the plaintiff's LPLA claims.

But after *Brown*, the Louisiana Supreme Court decided *Austin v. Abney Mills*, 824 So.2d 1137, 1154 (La. 2002), an asbestos case that involved the Louisiana Workers' Compensation Act, LA. REV. STAT. ANN. § 23:1021, *et. seq.* In *Austin*, the Louisiana Supreme Court expressly rejected the Fifth Circuit's reasoning that *Cole* should be restricted to its facts and that the *Cole* Court determined only "what 'events' meant under Act 431 and not what constitutes injury or damage in a long-latency occupational disease case." *Austin*, 824 So.2d at 1152. The Louisiana Supreme Court explained that "such an argument ignores our rationale in that case [*Cole*]" because "we clearly envisioned that the concept of 'significant tortious exposure' in long-latency occupational disease cases could include the concept of injury or damage giving rise to a tort cause of action." *Id.* The Louisiana Supreme Court then explicitly adopted the "rationale of *Cole*" and held that a cause of action for tort liability in long-latency occupational disease cases accrues upon significant tortious exposure to the disease causing agent that later results in the manifestation of damages:

Therefore, in order to establish when the tort cause of

8

> action accrued in a long-latency occupational disease case, wherein the plaintiff suffers from the disease, the plaintiff must present evidence that the exposures were 'significant and such exposures later result[ed] in the manifestation of damages.'

*Id.* at 1154 (quoting *Cole*, 599 So.2d at 1066); *see also Rando v. Anco Insulations Inc.*, 16 So.3d 1065, 1072 n.3 (La. 2009) (applying the "significant tortious exposure" theory to determine the date of accrual of plaintiff's cause of action in a long-latency occupational disease case under the Louisiana Workers' Compensation Act).

The Louisiana Supreme Court's analysis in *Austin*, particularly its express rejection of the Fifth Circuit's limited reading of *Cole*, compels the conclusion that Louisiana law uses the significant exposure test in the context presented here. Moreover, lower Louisiana Courts have used the significant exposure test to determine the date of accrual in long-latency disease cases involving the LPLA. *See, e.g., Kemp v. Armstrong World Indus.*, 855 So. 2d 774, 777 (La. Ct. App. 2003) (using the significant exposure test to determine the whether the date plaintiffs' cause of action accrued was before of after the passage of the LPLA); *see also Chustz v. R.J. Reynolds Tobacco Co.*, 72 Fed. Appx. 152, 153 (5th Cir. 2003) (acknowledging the

conflict between Fifth Circuit and Louisiana Supreme Court jurisprudence on this issue, but finding it "unnecessary...to resolve" whether the "significant tortious exposure" test of *Austin* should be used to determine whether the LPLA applied to products liability action brought against cigarette manufacturer). Accordingly, the Court will apply the significant tortious exposure test to determine the date that Moore's cause of action accrued.

Moore was not diagnosed with multiple myeloma until March 25, 2010. Plaintiffs allege, however, that Moore regularly used and came into contact with benzene or benzene-containing products including paints, solvents, primers and thinners from 1981 to 2005.[4] The plaintiffs allege that defendants manufactured, distributed, and sold these products.[5] Plaintiffs also assert that Moore used Exxon's Rust Ban 392 from the early 1970s through the 1980s.[6] Plaintiffs contend that Moore "sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries."[7] If Moore demonstrates that he

---

[4]     R. Doc. 1 at 5, ¶ 7.

[5]     *Id.* at 6, ¶ 9.

[6]     *Id.* at 5, ¶ 7.

[7]     *Id.* at 6, ¶ 10.

sustained significant tortious exposure before the passage of the LPLA in 1988, then his cause of action would have accrued before the passage of the LPLA, and his claim would be governed by pre-LPLA law.  Based on the allegations of the complaint, plaintiffs have stated plausible claims for negligence and strict liability under pre-LPLA law.

   *B. Sufficiency of the Complaint*

   Defendants argue that plaintiffs' LPLA claim should be dismissed because plaintiffs have failed to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Specifically, defendants assert that plaintiffs failed to allege which particular Valspar, International Paint or Exxon product Moore used, where Mr. Moore used the products, and when during the twenty-four year period that Moore worked as a painter he used the products.  Defendants contend that if plaintiffs cannot specify which particular products Moore used, and therefore cannot confirm that the products contained benzene, there is no basis for plaintiffs to assert a violation of a duty required to support a negligence claim, or the defective or unreasonably dangerous nature of the product required for a strict liability claim.  Defendants also argue that failure to name the specific product necessitates dismissal of plaintiffs' LPLA cause of

action. According to defendants, the four elements of an LPLA cause of action all presuppose that the manufacturer made the product, and if this is not established, then the LPLA claim must be dismissed.

A manufacturer is liable under the LPLA only for damage that its product proximately caused. *See* LA. REV. STAT. 9:2800.54(A) ("The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."); *see also* 12 WILLIAM E. CRAWFORD, LOUISIANA CIVIL LAW TREATISE § 16:23 ("Circumstances or conduct that will trigger liability of a manufacturer under the [LPLA] constitute fault under Civil Code art. 2315, so that the products action...continues to be in tort. Thus, all the peripheral characteristics of tort actions...continue to be applicable, such as...cause-in-fact, proximate cause...and others not inconsistent with the specific provisions of the Act."). In order to show causation, a plaintiff must "identify the manufacturer whose product caused her injury." *Jefferson,* 930 F.Supp. at 245 (noting that a plaintiff's obligation to identify a manufacturer is inherent in the LPLA's requirement that the plaintiff prove

12

proximate causation). Plaintiffs must make a similar showing of causation to recover under theories of strict liability or negligence. *See* LA. CIV. CODE arts. 2315, 2317.1; *Crotwell v. Blythe*, 769 So.2d 1227, 1230 (La. Ct. App. 2000) ("Plaintiffs brought this action against defendant under theories of strict liability and negligence. Causation is an essential element of both theories of recovery.").

It is true, as defendants note, that Louisiana courts do not apply a market share liability theory of causation. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 314 (5th Cir. 1998) ("[W]e have on more than one occasion expressly refused to hold that Louisiana would apply a market share liability theory to asbestos personal injury claims, where no Louisiana appellate decision had either done so or declined to do so."); *Jefferson v. Lead Indus. Ass'n Inc.*, 106 F.3d 1245, 1247-48 (5th Cir. 1997) (declining to adopt market share liability in Louisiana diversity suit for lead poisoning); *see also George v. Hous. Auth. of New Orleans*, 906 So.2d 1282, 1287 (La. Ct. App. 2005), *writ denied*, 924 So.2d 1016 (La. 2006) ("While market share liability is recognized by some jurisdictions, we find no Louisiana case law adopting it."). But plaintiffs do not seek to recover on a theory of market share liability. Rather, plaintiffs allege that the benzene-

13

containing products of each manufacturer injured Moore. Under these circumstances, plaintiffs must prove at least that each defendant's conduct "is a substantial factor generating plaintiff's harm." *Rando*, 16 So.3d at 1088 (citing *Quick v. Murphy Oil Co.*, 643 So.2d 1291, 1296 (La. Ct. App. 1994), writ denied, 648 So.2d 923 (La. 1995) (explaining that the substantial factor inquiry is an alternative method of analysis used when two or more combined causes are present)). In order to prove that defendant's conduct was a substantial factor in causing Moore's harm, the defendant's conduct must be a necessary antecedent to the harm. *See Rando*, 16. So.3d at 1089 (explaining that the Court's decision in *Dixie Drive It Yourself Sys. v. American Beverage Co.*, 137 So.2d 298, 302 (La. 1962), "equated the two concepts of substantial factor and necessary antecedent."). Although, "a plaintiff's burden of proof against multiple defendants in a long-latency case...is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant's product to the plaintiff's injury," *id.* at 1091, the focus of analysis here is the plausibility of plaintiffs' allegations taken as true.

The complaint states that Moore used "Valspar plastic primer, paint and thinner; [and] International paints, protective

coating, and primers[.]"[8] The complaint also identifies a particular Exxon product that the Moore used, Rust Ban 392. Plaintiffs also allege that defendants' products contained benzene and caused Moore harm. That plaintiffs have not identified the specific name of the Valspar or International Paint products used is not fatal at the pleading stage to their claim under the LPLA or their claims of negligence and strict liability. The complaint asserts that Moore used benzene-containing products made by Valspar, International Paint and Exxon, that benzene is known to cause myeloma, that defendants knew or should have known of the dangers of myeloma, and that Moore developed myeloma as a result of exposure to benzene-containing products. These assertions allow the Court to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *See Iqbal,* 129 S.Ct at 1949. Plaintiffs' failure to point to the specific Valspar and International Paint products, and to name the exact dates when and places where exposure to defendants' products occurred does not make the claim implausible at the pleading stage. In order to prevail against any defendant in this lawsuit, Moore will have to demonstrate that his exposure to a benzene-containing product manufactured by

---

[8] R. Doc. 1 at ¶ 6.

that defendant was a substantial factor generating his injury. The Court finds, however, that at this early stage plaintiffs' complaint is sufficiently pleaded to survive dismissal on this Rule 12(b)(6) motion.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

New Orleans, Louisiana, this 21st day of November, 2011.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE