```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

CRAIG MOORE, ET AL.                         CIVIL ACTION

VERSUS                                      NO: 11-1001

BASF CORPORATION, ET AL.                    SECTION: R

### ORDER AND REASONS

Before the Court is International Paint's motion for summary judgment on plaintiffs' claims of negligence and strict product liability.[1] Because plaintiffs have not demonstrated that genuine issues of fact exist as to Mr. Moore's significant exposure to benzene during the time period at issue, the Court GRANTS defendant's motion.

### I.   BACKGROUND

Plaintiffs' claims arise from Craig Moore's alleged exposure to products containing benzene when he worked as a painter from 1981 to 2005. In 2010, Mr. Moore was diagnosed with multiple myeloma. On April 28, 2011, plaintiffs filed a complaint against several paint manufacturers, including International Paint, LLC.

---

[1] Defendant Valspar filed the original motion for summary judgment, R. Doc. 153, and International Paint joined Valspar's motion. R. Doc. 157. Valspar has been dismissed from the suit, but because International Paint adopted the law and argument in Valspar's motion, the Court will treat the present motion for summary judgment as International Paint's motion.

Plaintiffs claim that defendant is a manufacturer of benzene-containing products that knew or should have known that exposure to benzene causes serious illness and failed to warn Mr. Moore of the dangers of benzene-containing products.  Plaintiffs assert claims of negligence, strict product liability and liability under the Louisiana Products Liability Act (LPLA).

Plaintiffs allege that Mr. Moore was harmed by his use of International Paint's products when he worked at Avondale Shipyards from February 1988 to December 1990. Mr. Moore asserts that he was exposed to the following International Paint products that may have contained benzene: International Thinner GTA415, Interthane Light Grey Finish Base, Interprime Red, DOD-E-699 Enamel Exterior Deck Gray, Interlac Signal Red Alkyd Enamel, and Interlac Yellow Alkyd Enamel.[2] Defendant filed a motion for summary judgment on plaintiffs' negligence and strict liability claims on the grounds that plaintiffs' causes of action did not accrue before the passage of the LPLA, which does not recognize such claims.[3]

---

[2]   R. Docs. 168-2 at 10-12; 168-3 at 39-50.

[3]   R. Doc. 157.

**II.   LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by

either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

Defendant contends that plaintiffs have failed to put forth evidence of Mr. Moore's significant tortious exposure to benzene before the LPLA was enacted on September 1, 1988. The LPLA "establishes the exclusive theories of liability for

manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). The LPLA does not apply retroactively, and thus plaintiffs may bring claims against International Paint that the LPLA does not recognize, such as negligence and strict liability, if their causes of action accrued before September 1, 1988. *See Gilboy v. Amer. Tobacco Co.*, 582 So.2d 1263, 1264-65 (La. 1991). In *Austin v. Abney Mills, Inc.*, the Louisiana Supreme Court adopted the "significant tortious exposure" theory for determining when a cause of action accrues in long-latency occupational disease cases. 824 So.2d 1137, 1153-54. (La. 2002). Under this theory, the cause of action accrues when a plaintiff's exposures are "significant and such exposures later result in the manifestation of damages." *Id*. (internal citation omitted).

   Moore began work at Avondale on February 4, 1988 and left in December 1990. As evidence of Mr. Moore's significant exposure to benzene, plaintiffs present an expert report that assesses Moore's exposure to benzene based on estimated benzene levels in defendant's paint products. Plaintiffs' expert, Dr. Kura, relied on previously published studies to calculate the amount of benzene in the raw ingredients used by defendant and to produce

5

estimates of the benzene levels in defendant's products.[4] Dr. Kura then analyzed Moore's exposure to benzene, using his calculations of the products' composition and his estimates drawn from Moore's deposition testimony in which Moore described the tasks that he completed at Avondale, the hours worked, the amount of paint and thinners used, his physical contact with the products, and the size and ventilation conditions of the areas in which he worked.[5] Dr. Kura concluded that Mr. Moore's total exposure to benzene through inhalation and dermal absorption for the time he worked at Avondale was 15.82 ppm-years.[6] To demonstrate the harm produced by such exposure, plaintiffs cite the reports of experts Dr. Jack Saux and Dr. Peter Infante, which describe the link between benzene exposure and the type of disease with which Moore was diagnosed.[7] In his report, Dr. Saux stated that epidemiological evidence demonstrates that benzene

---

[4]     R. Doc. 167-2 at 10-12.

[5]     R. Doc. 167-2 at 14-19.

[6]     *Id.* at 19. The unit ppm-years measures the cumulative parts per million a person was exposed to over a particular time period.

[7]     R. Docs. 167-9; 167-10.

levels ranging from 0.11 ppm-years to 652.66 ppm-years have induced cases of multiple myeloma.[8]

Defendant disputes the underlying methodologies and conclusions of plaintiffs' experts, in particular, Dr. Kura's assessment of the benzene levels in defendant's raw ingredients and his conversion of Moore's testimony about his work conditions into numeric values used to calculate Moore's total exposure to benzene. But even putting aside questions as to the reliability of Dr. Kura's calculations, defendant contends that plaintiffs have failed to show that Moore's significant exposure to benzene occurred before the LPLA was passed on September 1, 1988.

In determining whether exposures to asbestos before a certain date were significant, the Louisiana Supreme Court in *Austin v. Abney Mills* stated, "Tortious exposures are significant when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure." 824 So.2d at 1154 (internal citation omitted). In *Austin*, the Court found that plaintiff's testimony about the amount of asbestos he encountered while working and the affidavit of a doctor that linked plaintiff's early exposure to asbestos to his disease were sufficient to warrant a reversal of summary judgment. *Id.* at 1155. Similarly, in *Spillman v. Anco*

---

[8]   R. Doc. 167-9 at 16.

*Insulations, Inc.*, the court upheld the trial court's determination that the cause of action accrued before the date in question, citing plaintiff's description of his asbestos exposure and an expert's testimony that asbestos fibers cause changes in cells immediately and that no safe level of exposure exists. 994 So.2d 132, 135-36 (La. App. Ct. 2008).

　　Here, plaintiffs' experts did not analyze separately the period between February 4, 1988, when Moore began work at Avondale, and September 1, 1988. Instead, their reports discuss Moore's overall exposure. In opposing the summary judgment motion, plaintiffs estimate that Moore worked between 1336 and 1344 hours during the time period at issue. They conclude that Moore was therefore exposed to a daily average of 15.82 ppm of benzene over those hours. But although 15.82 ppm is the figure calculated by Dr. Kura, his report did not identify it as a daily average, but rather as Moore's cumulative level of exposure for the years he worked at Avondale.[9] Plaintiffs present no evidence that a cumulative level of exposure, measured by the unit of ppm-years, may also serve as the daily average of a person's exposure. Further, Dr. Kura's estimate of an exposure level of 15.82 ppm-years includes the products of both International Paint

---

　　[9]　R. Doc. 167-2 at 19.

and Valspar and thus does not establish Moore's benzene exposure from International Paint products alone.

Indeed, rather than on expert opinion focusing on the relevant seven-month period and on International Paint's products alone, plaintiffs rely on their counsel's calculations of Moore's benzene exposure during his first seven months at Avondale. Plaintiffs posit that the period before September 1, 1988 represented approximately 45 percent of Moore's total hours at Avondale and that Moore therefore received nearly half of his estimated exposure to benzene during the seven months in question. Yet, during his deposition, Moore did not address this particular time period or describe the amount of time he spent using defendant's paints or thinners during these months. Thus, there is no evidence supporting plaintiffs' hypothesis that Moore sustained roughly 45 percent of his exposure to benzene during the period before the LPLA was passed.

Moreover, even if it could be assumed that Moore sustained this level of exposure, plaintiffs have put forth no evidence that such a level constitutes significant exposure or that the exposure led to the later manifestation of damages. As previously stated, Dr. Saux and Dr. Infante offered no opinions as to the extent of Moore's benzene exposure during those seven months and whether Moore's illness would have progressed independently

9

without additional exposure. *Cf. Abadie v. Metro. Life Ins. Co.*, 784 So. 2d 46, 65 (La. Ct. App. 2001), *writ denied*, 804 So. 2d 642-4 (La. 2001), *cert. denied*, 535 U.S. 1107, 122 S. Ct. 2318, 152 L. Ed. 2d 1071 (2002) ("[E]xpert medical testimony establishing that the exposure was sufficient enough to begin the disease process is acceptable to fix the time period for accrual of the cause of action."). In his report, Dr. Infante described a number of studies that suggest that benzene is a cause of multiple myeloma, but he did not discuss Mr. Moore's exposure to benzene whatsoever. Moreover, although Mr. Moore's exposure to benzene during the seven months conceivably falls within the wide exposure range that Dr. Saux cited as inducing multiple myeloma, Dr. Saux did not indicate in any way that Moore's exposure during his first seven months at Avondale was significant.[10] Rather, Dr. Saux relied on Dr. Kura's cumulative estimate of 15.82 ppm in opining that "it is more probable than not and with a reasonable degree of scientific certainty, that Mr. Moore's multiple myeloma was caused in total or in part, by toxic exposures to benzene, paints, and thinners from his work as a painter."[11]

The Court cannot extrapolate from such a broad statement that Moore's alleged exposure to benzene from International

---

[10]   R. Doc. 167-9 at 16.

[11]   *Id.* at 19.

Paint's products during the period in question was significant and led to the later manifestation of his multiple myeloma. In *Austin* and *Spillman*, expert testimony specifically established that exposure to asbestos in the period in question was significant enough to independently cause the plaintiffs' eventual illnesses. *Austin*, 824 So.2d at 1155; *Spillman*, 994 So.2d at 135-36. Although Dr. Saux's report contained some language indicating that benzene acts rapidly on bodily processes,[12] such statements do not demonstrate that Mr. Moore's benzene exposure during the seven months in which he used defendant's paint products was so significant "that the disease would have progressed independently . . . without repeated exposure." *Chustz v. R.J. Reynolds Tobacco Co.*, 72 Fed. Appx. 152 (2003) (affirming summary judgment due to insufficient evidence that plaintiff's significant exposure occurred before the passage of the LPLA).

Plaintiffs have put forth no evidence that establishes the level of Mr. Moore's benzene exposure from International Paint's products between February and September 1988 and no evidence that such a level was significant and resulted in the later manifestation of his multiple myeloma. Because there are no genuine issues of material fact in dispute as to whether

---

[12] R. Doc. 167-9 at 17-18.

defendant's products exposed Mr. Moore to significant levels of benzene during the seven-month period in question, the Court finds that plaintiffs' claims of negligence and strict liability did not accrue before the passage of the LPLA in 1988.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on plaintiffs' negligence and strict liability claims is GRANTED.

New Orleans, Louisiana, this 16th day of October, 2012.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE