```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

CRAIG MOORE, ET AL.                          CIVIL ACTION

VERSUS                                       NO: 11-1001

BASF CORPORATION, ET AL.                     SECTION: R
```

**ORDER AND REASONS**

Before the Court is defendant International Paint's motions for summary judgment on plaintiffs' claims concerning product construction, design, warranty, and warnings under the Louisiana Products Liability Act.[1] Because plaintiffs have failed to establish that genuine issues of material fact exist as to their claims under the LPLA, the Court GRANTS defendant's motions for summary judgment.

**I.   BACKGROUND**

Plaintiffs' claims arise from Craig Moore's alleged exposure to products containing benzene when he worked as a painter from 1981 to 2005.  In 2010, Mr. Moore was diagnosed with multiple myeloma. On April 28, 2011, plaintiffs filed a complaint against

---

[1] Defendant Valspar filed the original motion for summary judgment concerning plaintiffs' construction, design, and warranty claims under the LPLA. R. Doc. 154. International Paint joined Valspar's motion, R. Doc. 156, and filed its own motion regarding plaintiffs' warning claims. R. Doc. 159. Valspar has been dismissed from the suit, but because International Paint adopted the law and argument in Valspar's motion, the Court will treat the present motion for summary judgment on construction, design, and warranty claims as International Paint's motion.

BASF Corporation, International Paint, LLC, the Valspar Corporation, Radiator Specialty Company, United States Steel Corporation, Exxon Mobil Corporation, Champion Brands, LLC, E.I. Du Pont De Menours and Company, and ABC Insurance Company.[2] Plaintiffs claimed that the companies are manufacturers of benzene or benzene-containing products that knew or should have known that exposure to benzene causes leukemia and other blood disorders, and failed to warn Mr. Moore of the dangers of benzene-containing products. Plaintiffs asserted claims of negligence, strict product liability and liability under the Louisiana Products Liability Act (LPLA).

Only International Paint remains as a defendant. Plaintiffs allege that Mr. Moore was harmed by his use of International Paint's products when he worked at Avondale Shipyards from February 1988 to December 1990. Mr. Moore asserts that he was exposed to the following International Paint products: International Thinner GTA415, Interthane Light Grey Finish Base, Interprime Red, DOD-E-699 Enamel Exterior Deck Gray, Interlac Signal Red Alkyd Enamel, and Interlac Yellow Alkyd Enamel.[3] International Paint now moves for summary judgment on plaintiffs' LPLA claims regarding construction and design defects, breach of warranty, and inadequate warnings.

---

[2]   R. Doc. 1.

[3]   R. Doc. 1.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

## III. DISCUSSION

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). To maintain a products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that

the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. LA. REV. STAT. ANN. § 9:2800.54. The plaintiff bears the burden of proving that the product was unreasonably dangerous. *Id.* § 9:2800.54(D). Further, the characteristic of the product that made it unreasonably dangerous must exist at the time the product left the manufacturer's control. *Id.* § 9:2800.54(C). A plaintiff can demonstrate that a product is "unreasonably dangerous" by showing: (1) that it was unreasonably dangerous in construction or composition; (2) that it was unreasonably dangerous in design; (3) that it was unreasonably dangerous because of inadequate warning; or (4) that it was unreasonably dangerous because of nonconformity to an express warranty. *Id.* § 9:2800.54(B). Defendant contends that plaintiffs have failed to put forth evidence demonstrating that its products were unreasonably dangerous under any of these four theories.

 A. *Construction or Composition*

International Paint contends that plaintiffs cannot support their claim that defendant's products were unreasonably dangerous in construction or composition. Under La. Rev. Stat. Ann. § 9:2800.55, "a product is unreasonably dangerous in construction

or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." To make this showing, a plaintiff "must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous'". *Welch v. Technotrim Inc.*, 778 So.2d 728, 733 (La. App. Ct. 2001).

Plaintiffs contend that Mr. Moore was exposed to defendant's products that contained benzene and that because defendant asserts that its products did not contain the chemical, its products materially deviated from its specifications or performance standards. But, in fact, International Paint stated only that its products did not contain benzene as a component or listed ingredient.[4] Under the Occupational Safety and Health Administration (OSHA) regulations, a company must list on a material safety data sheet (MSDS) all ingredients determined to be health hazards that comprise one percent of the mixture or 0.1% of the mixture if the ingredients are carcinogens. 29 CFR §

---

[4] R. Doc. 170-26.

1910.1200(d)(5)(ii),(g).[5,6] Therefore, a product may contain traces of an ingredient that does not appear on its material safety data sheet as a component ingredient, due to the makeup of a product's raw materials.

Defendant avers that it does not know whether its products contained traces of benzene during the years in which Mr. Moore was exposed to the paint, because it did not test the composition of its final products.[7] In claiming that defendant's products contained benzene and therefore were unreasonably dangerous in composition, plaintiffs rely on the opinion of an expert, Dr. Bhaskar Kura. Studying ingredient sheets for the products in question and estimating the probable levels of benzene in each individual ingredient, Dr. Kura concluded that defendant's products, in combining those ingredients, likely contained harmful levels of benzene, even though the chemical was not listed as a component ingredient.[8]

---

[5]  R. Doc. 170-7 at 11.

[6]  In addition, if a manufacturer has evidence that the mixture contains a component in concentrations less than one percent (or 0.1% for carcinogens) that could be released in concentrations that would exceed the OSHA permissible exposure limit or present a health risk, the mixture should be assumed to present the same hazard, and the hazard should be disclosed. 29 C.F.R. § 1910.1200(d)(5)(iv).

[7]  R. Doc. 170-26.

[8]  R. Doc. 170-3.

The Court has found Dr. Kura's opinions on the benzene levels in defendant's products to be unreliable and inadmissible.[9] Moreover, his report does not establish that the products actually used by Mr. Moore had benzene levels that deviated materially from defendant's specifications. A construction or composition claim focuses on "the specific product that was in hand at the time of use, as opposed to the product in general."  *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *7 (E.D. La. Feb. 20, 2008) *aff'd sub nom., Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009) (dismissing construction claim because plaintiffs did not allege manufacturing defect in specific pills that were ingested). Dr. Kura did not purport to test the particular paint products that Mr. Moore used.[10] Plaintiffs have put forth no additional evidence demonstrating that the products that Mr. Moore encountered deviated from specifications or performance standards or that plaintiffs even have custody of the paint in question so that tests may be conducted. Therefore, plaintiffs have failed to put forth evidence that International Paint's products were unreasonably dangerous in their construction or composition. *See, e.g., Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL 126847 (E.D. La. Jan. 15, 2009) (granting summary

---

[9]   R. Doc. 351.

[10]   R. Doc. 154-5 at 119.

judgment since plaintiffs did not put forth evidence of defendant's manufacturing specifications or demonstrate how the product in question materially deviated from such standards); *Gray v. Indus. Plant Maint.*, No. 01-1167, 2004 WL 1661209 (E.D. La. July 23, 2004) (plaintiff did not have custody of tractor that allegedly injured him and so could not demonstrate how it deviated from the manufacturer's standards); *see also Ortolano v. BDI Mktg.*, 930 So. 2d 192, 195 (La. Ct. App. 2006) ("[Plaintiff] has provided no evidence that this medication deviated from the manufacturer's specifications..."). Because plaintiffs bear the burden of proof on their LPLA claims at trial, defendant has satisfied its burden on summary judgment by pointing out that the evidence in the record contains insufficient proof of an essential element of plaintiffs' composition claim.

    B.   *Design*

Plaintiffs also contend that the products of International Paint were unreasonably dangerous in their design. To establish the elements of such a claim, plaintiffs must show that:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

9

La. Rev. Stat. Ann. § 9:2800.56. Plaintiffs must identify a specific alternative design in existence at the time of injury that was capable of preventing the injury, and they must also perform a risk-utility analysis. *Milton v. Rapiscan Sec. Prod.*, No. 04-591, 2005 WL 1400433, at *2 (E.D. La. June 6, 2005) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000). The alternative design proposed must be reasonably specific and not based on mere speculation. *See Seither v. Winnebago Industries, Inc.*, 853 So.2d 37, 41 (La. App. Ct. 2003) (expert's alternative concept was untested, unengineered and speculative, and therefore no valid alternative design had been put forth).

Plaintiffs rely once again on the testimony of Dr. Kura in contending that alternatives to defendant's product designs have been offered. During his deposition, Dr. Kura was asked to describe the alternative designs that defendant Valspar could have used in creating its paint thinners. No mention was made of alternatives to International Paint's products. Dr. Kura suggested that a quality-control program could have been used to ensure that the products' components did not contain benzene, but he did not suggest any particular substitute solvents that would have eliminated the purported traces of benzene.[11] Dr. Kura also identified as an alternative design the use of the same

---

[11] R. Doc. 170-9 at 13-15.

components, run through a purification process to study and remove contaminants.[12] He provided no specifics about the method for such a process other than to testify that "you can go through different distillation processes and chemical additions to expel the benzene out before using the product. . . . There are various techniques."[13]

The Court has deemed Dr. Kura's conclusions to be inadmissible. In any event, the ideas proposed by Dr. Kura are far too vague to qualify as existing design alternatives, because he does not identify the components in defendant's products that could be replaced or explain how a purification process would operate. *See Scordill v. Louisville Ladder Group*, No. 02-2565, 2003 WL 22427981, at *9 (E.D. La. Oct. 24, 2003) (plaintiffs failed to identify specific design alternative because they did not clarify how elements of the ladder they contrasted with incident model ladder would apply to incident ladder); *see also Abrogast v. Timex Corp.*, No. 05-2076, 2010 WL 148288, at *7 (W.D. La. Jan. 12, 2010) (expert stated that alternative tanning processes existed that would reduce presence of chemical in leather but did not identify those processes or state whether they existed when defective watchband left manufacturer's control). Dr. Kura's testimony also did not establish that any

---

[12] *Id.* at 16.

[13] R. Doc. 170-9 at 17.

such alternatives were available during the period in which Mr. Moore was exposed to defendant's products. *See, e.g. Lacoste*, 2009 WL 126847, at *5.

Further, Dr. Kura did not present any evidence on the extent of the risk that alternative designs would have avoided, the increased cost of manufacturing the proposed alternative designs, and the potential effects of the alternative designs on the products' utility, as is required under La. Rev. Stat. Ann. § 9:2800.56. *See Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 183 (5th Cir. 1990); *Scordill*, 2003 WL 22427981, at *10. Dr. Kura testified only that there are some abstract steps that Valspar, a different defendant, could have taken that might have reduced the levels of benzene in its products. Because Dr. Kura's opinions do not constitute evidence that design defects were present, plaintiffs have failed to demonstrate that genuine issues of material fact exist as to whether the designs of International Paint's products were unreasonably dangerous under the LPLA.

*C. Express Warranty*

Defendant next seeks summary judgment on the claim that defendant's paint products were unreasonably dangerous because they did not conform to express warranties made by defendant.

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to

12

>   use the product and the claimant's damage was
>   proximately caused because the express warranty was
>   untrue.

La. Rev. Stat. Ann. § 9:2800.58. An "express warranty" is defined as:

>   [A] representation, statement of alleged fact or
>   promise about a product or its nature, material or
>   workmanship that represents, affirms or promises that
>   the product or its nature, material or workmanship
>   possesses specified characteristics or qualities or
>   will meet a specified level of performance. "Express
>   warranty" does not mean a general opinion about or
>   general praise of a product. A sample or model of a
>   product is an express warranty.

La. Rev. Stat. Ann. § 9:2800.53. Plaintiffs contend that, in light of OSHA's requirement that hazardous ingredients be disclosed, defendant's material safety data sheets constituted express warranties that the only hazardous ingredients in its products were those listed on the sheets. As previously stated, the Court has determined that Dr. Kura's conclusion that defendant's products contained identifiable levels of benzene is inadmissible. Further, plaintiffs have not demonstrated that defendant failed to conform to an express warranty and that this failure made its products unreasonably dangerous.

   The Louisiana Supreme Court has characterized an express warranty as "a guarantee which the manufacturer or seller of a good voluntarily undertakes and extends to its customers." *Hopkins v. American Cyanamid Co.*, 666 So.2d 615, 623 (La. 1996). Defendant's listing of the hazardous ingredients in its products

was not voluntary, since the disclosures were mandated by federal regulations. Moreover, although the absence of benzene as a named component may have implied that the chemical was not present in the paint products, such an implicit statement does not represent the type of affirmative guarantee that the statute requires. *See, e.g., Fields v. Walpole Tire Service, L.L.C.*, 37 So.3d 549, 556-67 (La. App. Ct. 2010) (data sheet listing tire retreadability as benefit did not guarantee that tire would last for particular amount of time); *Scott v. American Olean Tile Co., Inc.*, 706 So.2d 1091, 1095 (La. App. Ct. 1998) (company's claim that its tile was "slip resistant" was not express warranty that tile was "slip proof"). Plaintiffs cite *Caboni v. General Motors Corporation*, in which the Fifth Circuit Court of Appeals held that a truck's owner manual, which stated that "[t]he air bag is designed to inflate in moderate to severe frontal or near-frontal crashes," constituted an express warranty, because it indicated that the air bag would meet a specific level of performance. 278 F.3d 448, 452-53 (5th Cir. 2002). But, that case is distinguishable from the present dispute, since in *Caboni*, the truck manufacturer made a clear representation as to when an air bag should inflate. *Id.* Here, defendant made no explicit references to benzene and instead stated that the products contained certain hazardous chemicals. Although the safety sheets could be considered misleading if in fact benzene was present in

the products, defendant did not make any voluntary representations regarding the composition of its products such that its lists of hazardous components could be considered express warranties. Without evidence of voluntary representations made by defendant, plaintiffs cannot maintain a claim that defendant's products were unreasonably dangerous in their failure to conform to express warranties.

   *D. Warnings*

Defendant contends that plaintiffs have failed to support their claim that defendant's products were unreasonably dangerous due to inadequate warnings. The LPLA provides that:

> A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
>
> A manufacturer is not required to provide an adequate warning about his product when: . . . (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

La. Rev. Stat. Ann. § 9:2800.57. Plaintiffs assert that the lack of warnings about benzene on defendant's material safety data sheets constitutes a failure to provide adequate warning. Defendant contends that plaintiffs have put forth no evidence that defendant's warnings were inadequate and that because

Avondale was a sophisticated purchaser, defendant had no obligation to warn Avondale of potential dangers in its products.

Defendant does not dispute that it issued no warnings about benzene but rather challenges the underlying claim that its products contained a harmful level of the chemical. To maintain a failure to warn claim, a plaintiff "must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharm. Corp.*, 238 F.3d 254, 264 (5th Cir. 2002). To establish the existence of a damage-causing characteristic, a plaintiff must provide evidence about the "cause, frequency, severity or consequences" of the characteristic. *Id.*

Plaintiffs rely on the conclusions of Dr. Kura in contending that the benzene levels present in defendant's products constitute a damage-causing characteristic. But, as discussed more fully in the Court's Order granting defendant's motion to exclude Dr. Kura's testimony and report,[14] the Court found that Dr. Kura's estimates of the benzene content in defendant's products are overly speculative, based on unreliable data, and unverifiable. Dr. Kura used material data safety sheets for defendant's products that dated from years other than the years

---

[14] R. Doc. 351.

in question to identify the ingredients in the products. He then assigned a benzene content to the ingredients based on data drawn from outdated studies that he did not verify. Dr. Kura's report did not include calculations demonstrating the way in which he arrived at the total benzene levels in defendant's products, and he testified that he deleted any calculations that did not appear in the report.[15] As Dr. Kura's opinions have been excluded as unreliable, his estimates cannot be used by plaintiffs as evidence that defendant's products had a damage-causing characteristic.

Plaintiffs also put forth reports by two other experts that describe the danger of benzene exposure,[16] but these reports do not address defendant's products specifically, identify estimated benzene levels in the products, or discuss whether these levels would be dangerous. Nor do material data safety sheets that list the benzene content of some of the product ingredients establish the benzene content in defendant's final products. Because plaintiffs offer no admissible evidence in support of their claim that defendant's products contained a harmful amount of benzene, plaintiffs have failed to demonstrate that defendant's products contained a damage-causing characteristic. Without such evidence,

---

[15]   R. Doc. 235-5 at 69-70.

[16]   R. Docs. 168-19; 168-20.

plaintiffs cannot establish that defendant had a duty to warn about the levels of benzene in its products.

Moreover, the Court finds that plaintiffs have put forth no admissible evidence as to the warnings that defendant should have provided if identifiable amounts of benzene were present in the products. In contending that the product warnings were inadequate, plaintiffs rely on Dr. Kura's report and testimony in which he discusses the appropriate warnings. But, the Court has determined that Dr. Kura's conclusions on product warnings were copied nearly verbatim from the report of another expert and that Dr. Kura testified inconsistently about the source of his conclusions.[17] Moreover, the Court has concluded that Dr. Kura's opinions as to the appropriate warnings that defendant should have provided are inadmissible. Because the Court finds that plaintiffs have not put forth evidence that defendant's products were unreasonably dangerous due to inadequate warnings about benzene content, the Court need not reach the issue of whether Avondale's status as a sophisticated purchaser relieved defendant of its duty to warn under the LPLA.

## IV. CONCLUSION

For the foregoing reasons, defendant's motions for summary judgment on plaintiffs' claims brought under the LPLA are

---

[17] R. Doc. 351.

GRANTED. The Court previously granted defendant's motion for summary judgment on plaintiffs' claims of negligence and strict liability. Because plaintiffs have no remaining claims, the Court therefore dismisses International Paint from the suit.

New Orleans, Louisiana, this 3rd day of December, 2012.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE