UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CRAIG MOORE, ET AL.                    CIVIL ACTION

VERSUS                                 NO: 11-1001

BASF CORPORATION, ET AL.               SECTION: R

### ORDER AND REASONS

Before the Court is plaintiffs' motion for reconsideration of the Court's orders excluding the testimony of plaintiffs' expert Dr. Bhaskar Kura[1] and granting defendant's motion for summary judgment on plaintiffs' claims under the Louisiana Products Liability Act.[2] For the following reasons, the Court DENIES plaintiffs' motion.

## I.  BACKGROUND

Plaintiffs' claims arise from Craig Moore's alleged exposure to paint products containing benzene when he worked as a painter at the Avondale Shipyards from 1988-1990. In 2010, Mr. Moore was diagnosed with multiple myeloma. Plaintiffs claim that defendant violated the Louisiana Products Liability Act (LPLA) by manufacturing products that it knew or should have known contained benzene and by failing to warn Mr. Moore of the dangers of benzene-containing products. As evidence of Mr. Moore's exposure to benzene through his use of defendant's products,

------

[1]    R. Doc. 351.

[2]    R. Doc. 352.

plaintiffs relied on an expert report by Dr. Bhaskar Kura in which he estimated the likely level of benzene in defendant's products and Mr. Moore's cumulative benzene exposure while at Avondale.[3] Defendant filed a motion *in limine* to exclude Dr. Kura's testimony and report, which the Court granted. The Court also granted defendant's motion for summary judgment on plaintiffs' claims under the LPLA. Plaintiffs now move for reconsideration of the Court's orders.

## II.   STANDARD

A district court has considerable discretion to grant or to deny a motion for reconsideration. *See Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir. 1993). In exercising its discretion, the Court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Id.*  Reconsideration of an earlier order "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004); *see also Fields v. Pool Offshore, Inc.,* No. Civ. A. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998), *aff'd,* 182 F.3d 353 (5th Cir. 1999). Thus, to succeed on a motion for reconsideration, a party must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v.*

---

[3]     R. Doc. 235-6.

2

*Marshall,* 426 F.3d 745, 763 (5th Cir. 2005) (internal citation omitted). Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478-79.


## III. DISCUSSION

### A.   Motion for Summary Judgment on LPLA Claims

Plaintiffs seek reconsideration of the Court's dismissal of plaintiffs' claims under the LPLA. Yet, plaintiffs' motion addresses only Dr. Kura's benzene calculations in arguing that the Court committed a manifest error of law or fact. Although the Court's determination that Dr. Kura's testimony was inadmissible weakened plaintiffs' ability to maintain their causes of action under the LPLA, the Court focused primarily on other defects in plaintiffs' claims in granting summary judgment.

To recover under the LPLA, plaintiffs needed to put forth evidence that defendant's products were unreasonably dangerous in composition or construction, design, due to inadequate warning, or due to nonconformity to an express warranty. La. Rev. Stat. Ann. § 9:2800.54(B). Regarding plaintiffs' construction or composition claim, the Court found that plaintiffs failed to show that the products actually used by Mr. Moore had benzene levels that deviated materially from defendant's specifications. *See*

*Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at
*7 (E.D. La. Feb. 20, 2008) *aff'd sub nom., Allgood v. SmithKline
Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009). Dr. Kura did not
test the paints used by Mr. Moore, and plaintiffs put forth no
other evidence regarding the specific paints he used and their
benzene levels.[4] Similarly, Dr. Kura did not identify a
reasonably specific alternative design to benzene or perform a
risk-utility analysis, both of which are required to establish
the elements of a design defect claim.[5] *See Milton v. Rapiscan
Sec. Prod.*, No. 04-591, 2005 WL 1400433, at *2 (E.D. La. June 6,
2005) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th
Cir. 2000)).

As to plaintiffs' express warranty claim, the Court found
that defendant had not made the type of voluntary guarantee
required to sustain such a claim.[6] *See, e.g., Fields v. Walpole
Tire Service, L.L.C.*, 37 So.3d 549, 556-67 (La. App. Ct. 2010).
Plaintiffs do not address any of these grounds on which the Court
based its grant of summary judgment, let alone establish a
manifest error of law or fact. Instead, plaintiffs focus solely
on the testimony and report of Dr. Kura, the exclusion of which
was not dispositive in the Court's analysis of whether

---

[4]   R. Doc. 352 at 5-9.

[5]   *Id.* at 9-12.

[6]   *Id.* at 12-15.

4

defendant's products were unreasonably dangerous due to one of these three characteristics.

Only the Court's findings regarding plaintiffs' claim of inadequate warnings rested on its determination that Dr. Kura's testimony should be excluded.[7] Plaintiffs asserted that defendant's products were unreasonably dangerous due to a lack of warnings about their benzene content. To maintain this claim, plaintiffs were required to demonstrate the "cause, frequency, severity or consequences" of a "potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharm. Corp.*, 238 F.3d 254, 264 (5th Cir. 2002).

In granting defendant's motion for summary judgment, the Court cited the exclusion of Dr. Kura's testimony and the absence of other evidence to establish the existence of a damage-causing characteristic, benzene, in defendant's products.[8] But, the Court also found that plaintiffs had submitted no admissible evidence as to the warnings defendant should have provided if identifiable levels of benzene were present in its products.[9] Plaintiffs relied entirely on the report of Dr. Kura in which he discussed

---

[7]    R. Doc. 352 at 15-18.

[8]    *Id.* at 16-18.

[9]    *Id.* at 18.

5

the appropriate warnings. The Court, however, found that Dr.
Kura's conclusions on product warnings were copied nearly
verbatim from the report of another expert and that Dr. Kura
testified inconsistently about the source of his opinions.[10] Dr.
Kura first testified that the report was his original drafting
and that he had not reviewed other experts' reports, but he later
admitted that he had at least seen another's report and taken
notes.[11] In their motion to reconsider, plaintiffs do not address
this basis on which the Court deemed Dr. Kura's testimony to be
unreliable. Therefore, even if Dr. Kura's testimony were used to
establish the presence of a damage-causing characteristic,
plaintiffs' claim of inadequate warnings would still be deficient
due to the lack of admissible evidence regarding the warnings
that defendant should have provided. The Court thus finds that
plaintiffs have failed to identify manifest errors of law or fact
that would warrant reconsideration of the Court's grant of
summary judgment on plaintiffs' LPLA claims.

**B.   Motion *in Limine* to Exclude Testimony of Dr. Kura**

Plaintiffs' motion for reconsideration centers exclusively
on the Court's determination that Dr. Kura's calculations as to
the benzene content in defendant's products and Mr. Moore's
cumulative benzene exposure were unreliable and thus

---

[10]    R. Doc. 351 at 20-21.

[11]    *Id.* at 20.

6

inadmissible. As discussed above, the Court finds that plaintiffs cannot maintain their claims under the LPLA regardless of whether these calculations by Dr. Kura are admitted. Nevertheless, the Court will address plaintiffs' contention that it should reconsider its exclusion of Dr. Kura's expert report and testimony.

Federal Rule of Evidence 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993). A district court has considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 371 (5th Cir. 2000). Despite this discretion, plaintiffs contend that the order addressing defendant's motion *in limine* contains manifest errors of law and fact, because Dr. Kura's testimony is reliable under the *Daubert* standard.

Plaintiffs disagree with the Court's assessment of the reliability of Dr. Kura's estimates of benzene content and exposure. In so doing, plaintiffs present arguments that largely formed the basis of their opposition to defendant's motion to exclude Dr. Kura's testimony. The Court will not reiterate all of the reasons for which it determined Dr. Kura's calculations to be

7

unreliable. In short, the Court found that throughout his assessments, Dr. Kura used figures that introduced potential error to his calculations and that he did not make adequate allowances for the uncertainty of his estimates.

For example, Dr. Kura's estimates of the benzene levels in the solvents used by defendant were drawn from a study by Dr. Kopstein that Dr. Kura made no attempt to verify with other materials. Dr. Kopstein relied on the figures used in another researcher's study that in turn drew upon studies from the 1950s and 1960s for the solvent naphtha and a source vaguely identified as "Dupont (Memo to John Coleman)" from 1978 for the solvent xylene.[12] During his deposition, Dr. Kura testified that he had never seen this memo, which was the original source of the data he used.[13] The Court found this use of unverified data to be problematic, for although an expert may rely on data collected by another expert, he must conduct some independent research to show that the calculations are reliable. *See Lightfoot v. Hartford Fire Ins. Co.,* No. 07-4833, 2011 WL 39010, at *4 (E.D. La. Jan. 4, 2011) (citing Fed. R. Evid. 703; *Bryan v. John Bean Division FMC Corp.,* 566 F.2d 541, 545 (5th Cir. 1978)).

Dr. Kura admitted during his deposition that benzene levels would likely be substantially less in the late 1980s when Mr.

---

[12]    R. Doc. 258-13.

[13]    R. Doc. 235-5 at 37.

8

Moore worked at Avondale than in earlier decades.[14] But, Dr. Kura argued in an affidavit submitted after he completed his report that the benzene content listed on material data safety sheets for the two solvents supported his assumptions.[15] The Court has already discussed at length the limited value of the data sheets that list the benzene content of the solvents naphtha and xylene in demonstrating the reliability of Dr. Kura's methodology.[16] The data sheets dating from the years that Mr. Moore worked at Avondale did not inform Dr. Kura's original analysis and thus do not represent an effort to verify his sources before producing a report. In addition, the data sheets do not identify the correct type of naphtha used by defendant[17] and list the benzene content of xylene as a maximum of 0.1% or "L.T. 0.1" benzene, indicating an amount of less than 0.1%.[18] Thus, Dr. Kura's estimates of 1000 pppm of benzene assume without basis the maximum possible amount of benzene in the solvents.

Dr. Kura's calculation of Mr. Moore's cumulative benzene exposure reveals a similar lack of reliability due to untested variables that represented the highest possible level of harm.

---

[14]   R. Doc. 235-5 at 38.

[15]   R. Doc. 258-15.

[16]   R. Doc. 351 at 8-10.

[17]   *Compare* R. Docs. 258-15 *and* 168-6.

[18]   R. Doc. 258-17.

As discussed in the Court's order, Dr. Kura testified that when estimating Mr. Moore's overall exposure level to benzene, he routinely made assumptions as to Mr. Moore's working conditions based on Moore's testimony. The Court found that many of these assumptions were unsupported or even contradicted by the record and that they increased unrealistically the estimate of Mr. Moore's exposure.[19] Although Dr. Kura's guesswork may have been justified in light of the limited information available at the time of his analysis, he did not adequately address potential error, other than to reduce his estimate of the hours worked by Mr. Moore by 500 as a blunt adjustment measure. Plaintiffs' motion for reconsideration attempts to justify some of Dr. Kura's calculations. But, plaintiffs do not address the extent to which Dr. Kura's assumptions, taken together, render his testimony unreliable, particularly given his failure to test the validity of variables that he knew to be rough estimates drawn from Mr. Moore's limited deposition testimony. In reviewing plaintiffs' motion, the Court finds that plaintiffs do not present new evidence or establish manifest errors but instead contend that Dr. Kura's assumptions were reasonable, arguments that the Court has already addressed.

That plaintiffs' motion presents a retroactive defense of Dr. Kura's figures rather than revealing the reliability of his

---

[19]     R. Doc. 351 at 12-19.

analytic process is exemplified by plaintiffs' lengthy critique of the report of defendant's expert, Jennifer Sahmel. The Court, however, did not accept her calculations or research over Dr. Kura's. Instead, the Court took note of Sahmel's skepticism of Dr. Kura's findings based on his failure to conduct a validation step to assess whether his results were plausible.[20] In responding to Sahmel's assessment, Dr. Kura did not present his calculations or provide more details that would demonstrate the reliability of his modeling. Instead, he dismissed Sahmel's understanding of the subject matter and provided the Court with no insight into the methods that he used or the way in which he accounted for uncertainty in his variables.[21] Thus, plaintiffs' extensive criticism of Sahmel's work and sources is largely misplaced and does not serve to demonstrate that the Court committed a manifest error in finding Dr. Kura's calculation of Mr. Moore's benzene exposure to be unreliable.

The Court also finds that plaintiffs misrepresent the Court's reasoning in arguing that manifest errors of law or fact are present. Plaintiffs contend that the Court incorrectly found that Dr. Kura failed to calculate the actual levels of benzene in each product. But, the Court in fact stated that Dr. Kura "did not include his actual calculations of the benzene levels in each

---

[20]   R. Doc. 351 at 18.

[21]   R. Doc. 258-15 at 3.

11

product, which would allow his methodology to be tested and validated."[22] Dr. Kura provided only the estimated amount of each solvent in the products and his estimate as to the benzene content in the overall products. Dr. Kura's process for calculating the benzene level in the final products was obvious for some of the products that contained only one solvent with benzene, as in the International GTA 415 product that plaintiffs cite. Other products, however, contained more than one solvent with benzene, and it was not at all clear how Dr. Kura arrived at his final estimate.[23]

Moreover, plaintiffs appear to imply through their reference to *Curtis v. M&5 Petroleum Inc.* that the Court deemed Dr. Kura's testimony to be inadmissible because he could not identify the precise level of Moore's benzene exposure, which the Fifth Circuit Court of Appeals held in *Curtis* was not necessary. 174 F.3d 661, 670-71 (5th Cir. 1999). But, as previously stated, the Court did not find Dr. Kura's estimates to be unreliable because of uncertainty as to the exact amount of benzene exposure experienced by Mr. Moore. Rather, the Court's exclusion of Dr.

---

[22]    R. Doc. 351 at 11.

[23]    For example, regarding defendant's product "Enamel Exterior Deck Gray", Dr. Kura stated that it contained 25-35% mineral spirits and 5% CAS #64742-95-6 and therefore contained 348 ppm benzene by weight. R. Doc. 235-6 at 11.

Kura's testimony stemmed from the extent to which his methodology appeared unreliable.

In any event, the Court's determination that Dr. Kura's testimony should be excluded falls well within its discretion to admit or exclude expert testimony. *See General Elec. Co. v. Joiner,* 522 U.S. at 138-39. That plaintiffs disagree with the Court's assessment of the reliability of Dr. Kura's report and testimony does not demonstrate that the Court committed an error. As previously stated, reconsideration of an earlier order is an extraordinary remedy, which depends on the establishment of a manifest error of law or fact or newly discovered evidence. *Templet*, 367 F.3d at 478-79. Because plaintiffs have failed to make such a showing, the Court finds that reconsideration of its orders is not warranted.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motion for reconsideration.

New Orleans, Louisiana, this 19th day of February, 2013.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

13